Case No. 22-1965 APP Group Canada v. Rudsak USA Inc. Mr. Solomon, whenever you're ready.  Morning, may it please the Court. Aaron Solomon, Avedna Ved LLP, Attorneys for Plaintiffs, Appellants, APP Group Canada, APP Group, DB and McHaj. Defendants Rudsak. It's McHaj. That's how it's pronounced? McHaj, yes, Your Honor. It's not McHage or McHage? As far as I know it's McHaj. And it's Canadian, so it could sound sort of, it's fashion, it could be sort of French. It's Canadian and it's French, yes. Yeah, I have the fashion knowledge of a chimp, so, you know, I'm not the right audience for it. So I'm glad to know how it's properly pronounced. I can't afford the coats myself, so. I'll refer to them as McHaj. Defendants Rudsak's infringement of our trade dress and their unfair competition is palpable from the complaint. But we've been forever foreclosed from addressing it and seeking redress for it because our complaint, our original complaint was dismissed at the pleading stage with no leave to amend. This was errored by the district court. The first error the court committed was dismissing our unfair, our New York common law unfair competition claim, which is predicated on two aspects. One was palming off. One was misappropriation. This court has held that unfair competition, common law unfair competition, is not only a broad and flexible doctrine, but it's adaptable and it's capacious. That's not disputed by opposing counsel. Here the complaint plainly alleges that Rudsak took our employees, they took our designers, they took our marketers, they took our sourcers. They had them go circumvent non-compete agreements by hiring them as consultants so they could. It's true that those allegations are in the complaint, but it's part of an overall argument about infringement of the trade dress, isn't it? It's not. If unfair competition really is different from the trade dress infringement, why didn't you separate them in the complaint? We did separate them in the complaint. In the end, but the allegations are not. The story that you tell is not. Because, respectfully, Your Honor, I feel like the complaint sets forth a story that includes two aspects to it. One is there's the coats that bear the V-shaped collar and the asymmetrical zipper. That's the trade dress. And there's ones that don't. They make other lines of coats that don't. But when they took our employees and when they took our proprietary information, they made both. And by doing so, they cut and skipped years of effort, energy, and expense that we expended and made coats that are literally indistinguishable. Including coats that don't have the trade dress? Correct. There are coats that don't have the trade dress that are also misappropriations of our unfair competition. The district court said, well, you have pictures of the coats with the V-neck and also with the asymmetrical zipper, but you also have lots of pictures of coats otherwise, and they're all there together. And the district court said, well, you show, therefore, your trade dress is unstable. But you're saying that those allegations are all there together because it's both to support a trade dress infringement claim but also to support unfair competition. Precisely. I guess my question was just, well, why wouldn't you be precise about that to make clear to district court that some of these allegations are for trade dress infringement and some of these allegations are for unfair competition? We endeavored to be. We kind of mixed them together. We endeavored to be. We didn't intend for them to be confusing. I understood the complaint wasn't confusing. If I thought it was, I wouldn't have presented it. It's not uncommon to structure a complaint by telling a story and then saying, as a result of all those facts, this is a legal claim and that is a legal claim. Right, we do it all the time. In the motion papers, in your opposition to the motion, did you make that clear? We were not as clear as we could have been or should have been, and I apologize for that. But it's a de novo review and the complaint, I think, is clear. But it is routine to list a story and then say that's a breach of contract, that's a tortious interference, which is what we attempted to do. There are two, and there's tons of pictures, but there are two separate pictures.  And just to be clear, the district court never really addresses the state law claims. The district court's position is- There's like one sentence and a footnote that doesn't really engage with the substance as I read it. Precisely. They say because your trade dress claims are insufficient, there goes everything else. And so therefore, you're saying that at least should go back to the district court. Of course, that doesn't probably get you very much because the district court, if it is affirmed on the trade dress, is for sure going to dismiss this for supplemental jurisdiction. You're not going to get the court to do this. It'll be dismissed without prejudice and you'll have to go to state court. But at least we could go to state court. But you're entitled to that. Right, at least we could have a forum for redress. Here, we're literally sitting in a glass box watching them knock it off our products. There's a mall in New Jersey near my home where there's literally a macaj store three doors down from a rucksack store, and they're identical. The products are identical. I get that argument, and you're running low on- I know. Let me move on. Regarding our trade dress infringement claim, our obligation is to enumerate the features of reported trade dress and how they're distinctive, and to put them on notice of it. We have a description of the trade dress. We have pictures that have the elements circled. We have photographs of them in use. Okay? Those allegations are sufficient, and the same level of granularity as in Geigtech, Ward, Wine Enthusiast, International Diamonds, E. Remy Martin, and my favorite, Carraway Home, which Judge Marrero found that a description of a pan where it has a U-shaped handle that attaches, that the description was bolstered by photographs which show the U-shaped handle and a lid that is a flattened disc shape, that was sufficient at the pleading stage to put them on notice. How is a U-shaped handle description different than a V-shaped collar description? That's our issue. And if it wasn't sufficient, let us amend to make it more sufficient. Every case that was cited by the district court or opposing counsel has been amended at least once, if not thrice. So you could do more by way, presumably, of satisfying the district court's concerns with respect to the description of the look you're saying. Of course we could. You think it's sufficient, but you could do, you could solve these problems. Of course we could, and as this court has held almost every year from 2017 through 2021, dismissing a complaint when in opposition to a motion to dismiss, a party asks for leave to replead, and giving us a Hobson's choice, either accept what someone in a suit tells you is wrong with your complaint, or having a judge tell you in a robe, and you live and die by that, is egregious error. That was your holding in question. The district court in this case says something like, well, maybe if the facts that are mentioned in the briefing about secondary meaning were in the complaint, it would have been sufficient. But they're not, so I'm going to dismiss it, right? That's right. And that could be fixed. Of course. The district court acknowledges it could be fixed. Correct. In our reply papers, we include additional allegations. This is what we would love to tell the court. We thought it was enough. If a person, a judge tells me it's not, I'm happy to amend it. Give us that chance. Could I ask a little bit about the question of aesthetic functionality here? Of course. Because one of the, and this, you know, maybe this just has to go back for all these other reasons, but what puzzles me about this is, and maybe the answer is secondary meaning allegations, that if you can show that the public thinks that this is equivalent to a trademark, then that's good enough. But it would seem to me, you know, you've got this kind of look. You can't copyright that look, right? And you can't copyright that design and keep anybody else from doing it. And so the issue becomes, are people buying the coats because they like a coat that looks that way, or are they buying the coat because they think it's a macage coat, you know, that is copying the design that apparently is popular, at least with some people. I see people on the subway and I haven't seen this coat, but I guess the people who can afford this coat don't ride the subway. It's not just that people like the look, which they're entitled to sort of copy otherwise. This is the equivalent of copying the Louis Vuitton label. This is the equivalent of making a counterfeit Gucci label and sticking it on your shoes or belts or whatever. Precisely right. And that is, your question is not only a good one, but it's one that can't be resolved on a pleading stage and it can't be resolved even on summary judgment. That's what this Court's held. It's a question that has to go to a finder of fact. In every case there has to be a trustee. Maybe this isn't really the main issue on the appeal, but it's something that worries me about this case. Maybe not at the pleading stage, but don't you have to make a... We've said that we have to be very careful about cases in which the trade dress claim is not like what your store looks like or the decor of your restaurant, but is the actual food, in effect, in the restaurant or the actual clothing that's sold in the store. We have to be careful of that so as not to turn a trade dress protection into the equivalent of copyright for clothing designs. And that's what concerns me most about the case. I sort of agree that really wasn't the principal thrust of what the District Court did, but don't there have to be some kind of allegations that are not just conclusory that gives the idea that when people, at least in the relevant demographic or consumer base or maybe everybody, sees this and immediately says, oh yeah, that's Louis Vuitton, in effect, because it's got LV on it, that somehow this collar is associated in the public mind not just with, that looks cool, I want one of those, but with, you know, if I buy it in the store next door, I think I'm getting a true macage coat when it isn't. Right. So, yes, that wasn't the thrust of the District Court decision, but to address your point 100%, we have ample allegations of the complaint that both in traditional media, for example, lists that our coat is, that the V-shaped collar and the asymmetrical zipper is the hallmark of a macage coat. Social media influencers call it the macage collar. It all started here. There's ample evidence in the complaint. Because you invented it. We invented it in 2007. How is this different from, like, going, this is something I do know about fashion, the Diane von Furstenberg wrap dresses of the 70s. It was just a wrap dress and people thought, oh, that's cool. And people who never heard of Diane von Furstenberg were happy to have that kind of dress. And I'm not sure that the fact that in certain fashion circles, in fashion reporting, it was sort of attributed to a particular designer means that the public thought that any dress that was in that shape must come from a particular company. Two answers to that. One, and this is why the case law cited by opposing counsel in the District Court is flawed, is because national lighting, landscape form, Steve Madden, Fun Boy, Yerman, NSI International, it's not the whole dress. We're not saying this coat, the fit, the color, the length, the pockets, don't touch it. It's not a wrap dress. This particular element, if my suit had five lapels, that's us. And once you see a suit with five lapels, you know it's us. You started out by saying that it's either or. And then in the briefing here, it becomes the combination of them. And there's just two of these asymmetrical zippers. Fair question. It's kind of evolving, and that's my problem. It wasn't meant to be evolving. What it was meant to be was to show that the V-shaped collar and the asymmetrical zipper, we were trying to explain to the opposing counsel in the pleadings that these are two elements that are the trade dress. So it wasn't meant to be one or the other, but they're both independently. So it's jackets that have both of them? Correct. It's jackets that have both of them. So if you had a coat that had the macage collar but had a straightforward zipper that you could just zip right up, that wouldn't be an infringement of the trade dress under the complaint that at least you would file an amendment? Well, it still could be because you could say you don't have to copy a trademark perfectly to be infringing. But, yes, we're saying it is both of them together. That's what the district court said was not enough because your definition would have encompassed that. Well, I think their definition, they said the definition was vague or I don't know. Because you said and or. Right. The idea was to try and convey that. So you're saying that it's only distinctive trade dresses if it's the both together. Correct. So you wouldn't disagree if you said our distinctive trade dresses, we have gray coats, and whenever anybody sees a gray coat, they know it's a macage, right? That would not be distinctive. Of course not. So it is possible to dismiss trade dress infringement claim at the pleadings. For sure. You're just saying that here it's plausible enough because you have these distinctive features. It's so distinctive that magazines and influencers recognize it. There's a name for it. There's no name for this kind of suit. It's a suit. Right. That makes it plausible. But the question is you still have to prove that actually the consuming public associates the design features with your brand. Give us a chance to do that. Right. Can I ask, I mean, on the trade dress dilution claim. Yes. Is your contention that the V-neck design and the asymmetrical zippers are nationally known, or do you think that's not a requirement for trade dress dilution? They're nationally known, number one. You think they are nationally known? They are nationally known, yes. They're internationally known. What was the evidence of that? Why did the district court make a mistake with it? Well, the district court, one, we have evidence of it. I believe it's on A12 through 13 of the record. But the evidence is the consistent media attention. Oh, because these magazines, Us and People and Daily Mail and whatever, these are just all around the country. They're nationally circulated. And so your allegation is that it is nationally known, and so you think the district court was wrong about that. But doesn't it have to be really nationally known? Like, it has to be that the consuming public of the United States is aware of it. That needs to be something that's determined at a trial, not on the pleading body. So you think it's plausible enough at this stage that it's nationally known. But then, I guess, under New York law, there's no requirement that it be nationally known. Correct. There's no requirement to be famous. So even if it were only regionally known or locally known or something, then you still think you would have a New York State trade dress dilution claim. Precisely. But the issue isn't, I don't think the issue is regional versus national, is it? I mean, isn't the issue niche versus the world? And for the federal dilution claim, I thought our cases were pretty clear that this has to be like Coca-Cola. This has to be something that literally everybody is aware of, or if not, you know, someone in an asylum somewhere. But the typical person, you know, if you took a survey and you asked them, you know, who makes Coca-Cola, they'd say the Coca-Cola company, right? If you show them the mark, they'll say, yeah, I know what that is. That's Coca-Cola. And you're not seriously contending that the whole world knows macaj codes. That is our contention, Your Honor. They're in many malls. They are in many magazines. The mega-deductious Meghan Markle is Madonna. Fortunately for you, the law is very clear that this is not something that judges are supposed to figure out based on whether they know of it. Correct, which is part of the problem here. In the judge's decision below. Well, how would it be erroneous for the district court to say, look, it's not plausible. This is as well-known as Coca-Cola? Because it's not for the judge to decide. That's an issue of fact. Well, the plausibility of it is an issue for the judge. I don't want you to dismiss. The plausibility is. But I think by saying it's not plausible because I personally don't know it that well, I've heard of Hugo Boss. I haven't heard of your company, is not a grounds for a pleading dismissal. Right. You can't go out and ask everybody you know, how do you pronounce macaj anyway? And they say pronounce what? That's going outside the record and everything else. Just looking at the evidence you have in the complaint, though, I mean, the fact that Us Magazine has a feature about autumn coats, and one of the featured ones is a macaj coat. And People Magazine does the same thing as among a whole bunch of other coats. I don't know. How from that can I conclude that? I mean, would all of these coats featured in these advertisements be nationally known just because they're in a publication that is distributed nationally? That's our contention, Your Honor. That's in the pleadings. It's not implausible. Oh, so you're saying that because in Us Magazine we have this picture of six different brands of coats, one of which is a macaj coat. You're saying all six of those companies could plausibly allege that their brand is nationally known because they were in Us Magazine. I don't know, Your Honor. What I do know is that we've got our coat in Us Magazine, People Magazine, pictures of Madonna wearing it, pictures of multiple celebrities wearing it. It's in international magazines. It's in InStyle Magazine. Our position is it's out there so much, and it's associated with our brand so much. It's a hallmark of our brand. It's a trade dress of our brand. It's the indicator of source for our brand. People know that across the country, and the district court judge's issue wasn't how far across the country are you known. Her issue was are you known only in a niche market or a non-niche market, and that's a misreading of our pleading, and it's also not required under state law as well. And then that brings me past the dilution claim to, again— Under state law, you can have a dilution claim for something that is not a famous mark as the federal statute requires. Precisely. And then just to leave off, if I have the court's indulgence, this court, again, has said consistently from 2017 to 2021 a dismissal on initial pleading without leave to amend is an egregious error. I'm supposed to find out that my complaint is not sufficiently detailed or not clear enough from somebody wearing a robe, not somebody wearing a suit. The district court put you to this choice of either responding to the motion to dismiss or filing an amended complaint. Do you think that's impermissible? The district court's not allowed to do that? This very court thinks that's impermissible to do that. And Cresci and Lovelay— As a categorical matter, it's always impermissible or only under certain circumstances? For a court to say opposing counsel says you should amend, your complaint's deficient, would you like to amend, giving someone the opportunity to is not a problem. Saying you can choose—it's a Hobson's choice. You can amend, give up your free amendment, and accept what your opposing counsel says is wrong, or live and die by your present complaint. That's what Cresci and Lovelay— You're saying parties should be entitled to have a test of their complaint before they have to amend? It's an adversarial system. All day long, attorneys tell each other that what they did was wrong. We need judges to tell us what actually needs to be done and give us an opportunity to fix it. And all the cases that were cited by district court and opposing counsel— Because, of course, you could have filed an amended complaint that responded to the particular issues that they raised in their motion. And then have a district judge tell me those aren't the right issues. Right. It's still bad, but now you don't have an amendment anymore. Well, of course, then they—you know, but then are they—I mean, I see your point. But maybe there's a question of is it reciprocal that if you satisfy the things that they ask you to do, then they are limited to that because— See, I never—this I never did as a district judge because I thought people file their complaints. They file their motions. You can file a motion. You don't have to get my permission to file a motion. The rule says you can file a motion. And so I would just deal with it. But I know that some judges do it otherwise. And if it were reciprocal, maybe your point has less force because if they said, well, if you satisfy these issues, then you're golden. I'm not going to entertain a motion except on the specific grounds that this amendment doesn't satisfy the very things that they raised. That may be a practical and workable protocol. But that's not— That wasn't what was said. Nor was what in Kreshe or Leveley. Thank you, Your Honor. Thank you, Counsel. You're reserved a few minutes for Mr. Donahue. Thank you, Your Honor. May it please the Court, I'm David Donahue for APALE, RUDSAC USA, Incorporated. The plaintiff's case here alleges copying over and over, whether it's allegedly protected designs or unprotected designs. But copying in itself is not improper, even if they were correct that there was copying here. Supreme Court has repeatedly said that copying of unprotected utilitarian designs, including clothing, is not only permissible but is beneficial. It benefits consumers at large. What is a utilitarian design? I mean, isn't it obvious that it's harder to zip up two separate zippers than one zipper that just runs the length of a coat? Well, Your Honor— It seems ridiculous to me to buy a coat that has two separate zippers I have to zip up. I mean, it just seems like it's not, like, a useful thing. I ride the train every day with people who wear double-breasted coats, which is basically—essentially what an asymmetrical zipper is. It's double-breasted. It prevents wind from coming directly up the front of the coat. With a vest underneath that has a zipper to keep them warm on the neck. There's nothing groundbreaking about this design. Well, so that's interesting. So you think it is a functional design, a utilitarian design? Yeah. It's not our burden to prove that it is functional. It's their burden to prove that it's not functional. Yeah, but I think the point about this design— And I'm saying, well, you know, you look at the design. It's plausible that it's not functional because it seems inefficient. You know, maybe they should move to this next stage, and then you can argue that it is functional, right? Well, my point, Your Honor, is that there are obvious functional elements of the two elements that they've identified. A fur on a hood and a collar provides warmth as well as protection from wind. But they're not saying the design feature is the fur. They're saying it's the V-shape. The V-shape allows easy access to the zipper so that you can wear the turtleneck zipper that they talk about. You can unzip it and leave it open while still having warmth in this area as well as protection from wind. They're just—they're obvious— But even if it didn't have this function specifically, the question of aesthetic functionality comes into play in the fashion industry. And I suppose it's not exactly the way you make the point, but one of the ways you—one of the things you're arguing really is it's just like somebody sends a photographer to the fashion show of some designer and takes pictures of what's on the runway and brings it back to China and somebody else makes clothes that look like that. That's okay. The copying is not in itself a problem, I think, under either federal or state law. If it's just—if it doesn't infringe on something that is the equivalent of a trademark. It's the same as putting a label on it that says macage when you use this particular thing because of the secondary meaning it has. That's the argument on trade dress. And the argument on misappropriation, it sounds to me, is if it's not just that you sent—you saw this in a store window, took a picture of it, and then went back to your designers and said, make us clothes that look like this because we think that's cool and that's going to be the next big thing. It's that you hired people who had worked for them. You sort of, in effect, violated non-competes or did something that was like that. I don't know if that's enough, but the idea is you're doing more than just copying what their clothes look like. Well, a few things— Is that the argument about misappropriation? A few things, Your Honor. On going to trade dress and misappropriation, the principle is that copying is not only permissible if a design is unprotected by copyright, trademark, or patent. It's not only permissible, it's encouraged. We were laughing about saying we couldn't afford these coats. Well, competition allows for less expensive coats that other people can't afford to have the same aesthetically pleasing design. It's not only permissible, it's encouraged. The Supreme Court has said that over and over again. The Kellogg-Shredd-Wheat case 85 years ago, the court pointed out that the public has a deep interest in permitting copying of unprotected articles. The traffic devices case talks about the salutary interest of copying. So the issue is how far do they need to go with their pleading in order to establish that this is a trade dress infringement, for example, or that this is an unfair competition because they claim that you're doing something more than just copying the design, but you're copying it using particular means that are unfair. Well, starting with trade dress, Your Honor, and then I'll come to the misappropriation claim. Starting with trade dress. Because of the principle of free competition and because of the public's deep interest, in the Supreme Court's words, in free competition, this Court, the Supreme Court, and the Lanham Act have erected hurdles that someone has to meet to take an aesthetic design out of the public domain and give them a monopoly over it. So this Court has stated very clearly you have to provide a precise expression of the character and scope of the claim trade dress. They didn't do that here. They've changed their definition of the trade dress at least three times. This goes to the question of amendment because if the issue is they fudged on whether just the zipper is good enough to have a claim or just the v-neck is enough to have the claim, and now they say it's both. Well, why don't they get to amend to clarify that they mean both? Two reasons, Your Honor. First, they said in the complaint, individually and collectively, they showed images that they claimed infringed the asymmetrical zipper. They showed other images that they claimed infringed the macage collar. When we challenged them, they said, no, that's not what we meant. We didn't mean the asymmetrical zipper by itself. We mean the macage collar together either by itself or together with the asymmetrical collar, the asymmetrical zipper. The district court said that's not what you pled, but I'll consider it anyway. That's still insufficient. Now on appeal, they're saying it's both together, not either one individually. Did the district court decide that both together is not good enough? Yes. Okay. Yes. The district court said that it was still too imprecise because it was. Well, the district court says the description is too imprecise, right? The description that's in the complaint. The description is too imprecise, and they also didn't adequately plead second. But that's – so the complaint originally says either or. The district court says I look at this. Sometimes you have the collar. Sometimes you have the zipper. Sometimes you have none of the design features. You haven't alleged a stable trade dress. And they want to say, well, maybe we shouldn't have said either or. Maybe we should focus on the – when they're together because as you said, individually or collectively, maybe it states a claim insofar as they allege collectively but not insofar as they allege individually. So why should they – the precision issue is different than the substance of whether each and every one of those iterations would be insufficient. The precision issue could be cured by an amendment. The substance can't be. If any one of those three doesn't work as trade dress, then that's a substantive problem. It would be futile to go back and say both.  Is substantively not enough to be trade dress? Yes. I believe the district court did rule, and the district court also found that they didn't adequately plead secondary meaning or adequately plead that the designs were nonfunctional. Well, secondary meaning, actually the district court does explicitly say maybe if the fact that we're in the briefing, we're in the complaint, I would say it was plausible. And then the district court says, but I'm not going to give you a leap to amend anyway. Well, Your Honor, she said – So isn't the district court actually recognizing there are facts available that could cure the problem? Or that might be able to cure the problem? I shouldn't definitively say, but that might be able to cure the problem. Your Honor, I think you're talking about functionality, not secondary meaning. It was in a footnote. Okay. It was in a footnote that the court said that if you had pleaded certain of the things that you argue that were not in the complaint, maybe you could have fixed functionality, but you still would have the problem of an imprecise trade dress and the lack of secondary meaning. But to your point, Your Honor, yes, the court – So the district court thought at least on some of the issues, there were facts available that could have been added that might have made the claim plausible. But it would have been – no. It would have made non-functionality plausible, but it was futile. But there were other issues. But it was futile because they hadn't fixed the other issues. And two other points on the lack of – So the district court denied leap to amend because it was futile because they were all based on this overly general description. But if that can be fixed, then the reasoning for the futility is undermined, isn't it? Well, Your Honor, I think that the court found that it was futile not just because it was imprecise, but also because it was, as pleaded, not capable of functioning as a trade dress, a predictable trade dress, including because of a lack of adequate allegations or plausible allegations about secondary meaning as well as functionality. So there are multiple reasons that their pleading failed. And to the point on a lack of the right to amend, they had a single sentence request at the very end of their brief saying, if this case is dismissed, we should – if the complaint is dismissed, we should have the right to amend. They didn't tell the court what they would do to beef up their allegations. And a case of this court authored by Your Honor, Judge Lynch, F5 Capital, involved a similar situation where this court said you have an informal request. You didn't tell the court what you would do. You didn't make a motion to amend after dismissal. And another published decision of this court, both after Lorelei, a case that they mentioned and relied upon, Tannerite Sports, same situation that happened here, one line request for leave to amend, no explanation of how they would amend. We've done that frequently. But these are a little bit judgment calls, aren't they? I mean, it depends a lot on if you can see that the complaint is not salvageable because what is being – there's nothing in the record that suggests that they have anything else. But when you have one thing that seems to me to be transparently fixable, which is if they haven't been clear enough as to what exactly is the trade address they're alleging, obviously that can be fixed. And secondly, if you're saying that there are facts that are in their brief but I don't need to consider those, that's a somewhat different situation than you get a case that comes to this court and we still don't know what they would say because no one has ever told us what they're going to say to solve that problem. Well, Your Honor, trade address – pleading trade address is not supposed to be an exercise in throwing whatever you can against the wall and seeing if it will stick and when it will stick. When a party continually changes its definition of what the trade address is – They only had one complaint, right? Can we talk about – so the district court says there isn't adequate trade address allegations because they weren't specific enough in their allegations. They didn't allege stability of the trade address, and it didn't acquire secondary meaning, right? As well as functionality, yes, Your Honor. And functionality, right. So having specific allegations, like you don't dispute that could be fixed with an amendment, right? If the district court says, I don't want to just look at the pictures, I want you to tell me exactly what it is about these design features that show a specific trade address, that's something that you could add if that's the only problem, right? Well, I don't – I know it's not the only problem, but I'm doing the work that I'm – In this case, I don't think they have a predictable trade address. I don't think that they could plead a predictable trade address. Right, but now you're saying we should look at the pictures and say there's no way to describe this design as being specific enough to be a predictable trade address, right? No, I'm saying – That's not what the district court – I'm saying it's their burden to identify in their complaint specifically and precisely what the trade address is. And when we moved to dismiss, they changed their definition of the trade address. The district court considered both what was in the complaint and what they said in their opposition to our motion to dismiss. So they already had two bites at the apple. They're asking for a third here. And the fact that they waited until their reply brief to finally tell the court – In this case, they were specific enough in their – the argument they made in opposition to the motion to dismiss, and the district court considered that. So now you're saying it wouldn't be sufficient. Correct. And what about stability? So the district court is worried about the fact that some of these pictures have the collar and some of them don't. Some of them have the zipper and some of them don't. But now they're saying, well, we don't need to have a trade address that goes across all our products, but we're going to seek trade address protection for the ones that have the features. I still don't – No, they could have made that – you could have made that clear with an amendment, couldn't you? Well, if they had cleared the complaint – Do you think that they need to show that all of their coats have both design features in order to say that they have a predictable trade address? Like you could have a trade address that applies to some of your products and not others, couldn't you? Can you have – yes, in theory you can have a trade address that applies to some products but not others. So if the district court objects and says, well, I don't think the trade address is stable enough because I look at the complaint and I see some coats that don't have the design features, couldn't they make clear an amendment? Well, we included those pictures just because we're also having unfair competition claim, but you should apply the trade address claim only to the coats that have these design features. That's something that could be clarified in an amendment, couldn't it be? I don't think that that was the basis for the court's dismissal of their complaint. So why does the district court think that there isn't a stable trade address? Because they pleaded as being an individual – like an and-or basis for the trade address. But on top of it, that the elements of the trade address were not described adequately and were not – did not explain how they were distinctive as well as the issues of secondary meeting and functionality. Okay, but let's go back to the first one about the specific description. I mean you could put a description – a specific description like that in an amended complaint, couldn't you? Well, Your Honor, they never told the district court whether in their opposition to the motion to dismiss or in any post-dismissal motion, whether a motion to amend as the court pointed out in F-5 capital or a motion for relief from judgment as the court pointed out in Tannerite sports, they waited until their reply brief on appeal to say, well, okay, here finally – we'll finally tell you how we might have attempted to fix these problems. And our position is that they still don't fix the problems even if the court considers what they put in their reply brief. So we're talking about an exercise here of them strategically trying to like unpeel the onion and wait until the last minute to say, okay, here's what we're really saying. And it's not fair and it's not a proper exercise of the – proper use of the adversarial system. May I please respond on unfair competition as well? Sure. Mentioning strategic choices. In the district court, we moved to dismiss the unfair competition claim. They had an opportunity to explain to the court what the basis for that claim was, and they pinned it all on the trade dress. They're now coming to this court and asking this court to criticize the district court for not – for failing to consider an argument that they didn't make. They said time and time again the trade dress – the unfair competition claim should stand because we've pleaded trade dress infringement. And now they're saying, oh, no, no, that's not what we meant. We meant – we didn't mean trade dress infringement. We meant these other unfairly competing codes. It's a little hard to understand how they can be making a claim of trade dress as unfair competition with respect to items that are in the complaint that don't have either of the features that supposedly constitute the trade dress. There has to be some other theory about that, right? Well, what they did in the complaint was they used that. So unfair competition has very similar elements to federal trade dress infringement, except you need to also prove bad faith explicitly. So what they did in paragraph 79 of their complaint, when they were actually setting forth the unfair competition claim, they said – they said a defendant is also engaged in bad faith by doing these things with, you know, designs, templates, models, et cetera. So it was only – in the complaint at least – only used as additional evidence of bad faith to satisfy the bad faith standard. In their actual – Well, I don't know. I mean under – where are you saying – you said paragraph 79 is – Yeah, I believe it was 79. So paragraph 79 says defendant also acted in bad faith by willfully and deliberately attempting to obtain and obtaining McCage's proprietary information by flouting or skirting McCage's efforts to protect same. And if you go back to the supporting allegations for this claim, which I think begin on paragraph 40, it talks about the efforts they take to protect their proprietary information and the confidentiality agreements and so on. And then it says that Rudzak attempts to misappropriate their proprietary information and that Rudzak wrongfully, willfully, and deliberately hires ex-McCage employees who are intimately affiliated with unique aspects of the designs and utilizes them to copy the style verbatim. So why isn't paragraph 79 a reference to those allegations about the efforts that your client takes to misappropriate the proprietary information rather than just be about the trade dress? Well, the question, Your Honor, is what did they argue to the district court? We'll get to that in a second. So if the complaint has sufficient – so do you dispute the complaint has these allegations that might support a claim on grounds that the district court did not address? Yes, we dispute that because we made argument to the district court and we still argue to this court that what they alleged about the unprotected designs was woefully insufficient. And even in their reply brief where they improperly – Okay, so you're saying they wouldn't say the claim for unfair competition because they haven't made that out. But they do make allegations that are different from just the infringement of trade dress to support an unfair competition claim, right? Right, and the question is what was the significance of those allegations to their complaint? And when we press them on – when we move to dismiss on ground that they didn't explain what was proprietary or include plausible allegations that would explain why these things are proprietary to them, they say models. What does models mean? Are they saying like human beings or actual physical models? Are they claiming that employees stole things? Is there a corporate espionage claim here? We have no idea what they're talking about because the allegations are so vague. They've never explained how they would fix that. Well, hiring employees from the other company who have know-how or knowledge or whatever, that seems pretty clear what they're alleging, doesn't it? Well, that's not illegal in and of itself, Your Honor, and they don't identify any employees. They don't identify any designs that were stolen or any – they have a separate allegation that says that we went to stores and bought their clothing so that we could reverse engineer them. There is absolutely nothing wrong with that. Okay. But now you're saying the district court should have looked at those allegations and said they don't sit a claim for unfair competition under New York law, but the district court didn't do that. We asked – we – It's interesting that basically their opposition to the motion to dismiss waived what's in their complaint. Correct. Because we – interpreting their complaint, we argued that those allegations were insufficient. And the way that they dealt with our argument was to say the cases that you've cited that would suggest that our allegations were insufficient regarding these, you know, unprotected coats are completely an apposite because in this case we allege trade dress infringement. It's right in their brief. And so they told the district court, this is what we mean. The district court can't – is not required to imagine arguments that they might come up with or that, you know, it's an adversary system. They're the master of their complaint. They're the master of their opposition to the motion to dismiss. And they've never – Have we said that? I mean, it's an interesting question. Have we said that the arguments you make in opposition to a motion to dismiss can waive allegations that are in your complaint that might make that a claim if you don't bring them up in opposition? Yes, I believe so, Your Honor. When have we said that? Oh, has the court said that? We cite a case in our brief for the idea that the court is only required – the district court is only required to address arguments that are made by the parties below. It's part of the adversarial system. We're not dealing with a pro se litigant here. We're dealing with a party that claims in its complaint that it's extremely well funded and successful. They make – their counsel makes strategic choices and they're stuck with them. Okay, what about trade dress dilution? So there's this idea about whether the brand is nationally known. But then isn't it true that it doesn't have to be nationally known under New York law and the district court didn't say that? Well – Didn't it separately consider the New York claim for trade dress dilution? Two things on that, Your Honor. First, nationally known is – the standard is actually more exact than nationally known. It has to be known by the general consuming public of the United States. It's not just a geographical – some people know about it in California, other people know about it in New York. It's that everyone – the average American consumer knows about this. I understand that. But I guess I'm saying – but New York law doesn't have that requirement. New York law does not. So why should the New York state trade dress dilution claim be treated the same way? Because under New York state law, you still need to prove – you still need to sufficiently allege secondary meaning, which they haven't done here. And you still need to have – Okay, so that's why. It's not because of the nationally known. Correct. It's because of the separate – they haven't – because they don't – haven't made out a trade dress infringement claim, they can't assert a trade dress dilution claim under New York law. Correct, Your Honor. Okay. As well as on dilution. But if we were to conclude that they did plausibly allege a trade dress infringement claim, would it follow that they plausibly alleged a trade dress dilution claim under New York law? Because all New York law requires is a predictable trade dress and the possibility that the conduct would dilute the trade dress, right? I believe that is correct, Your Honor. If they had sufficiently pleaded a federal trade dress infringement claim, that would likely satisfy the state dilution claim. Our position is that they've done neither. One thing I would point out, on dilution, they claim that – well, look at our complaint. We have pictures from People magazine, and people talk about the bokaj collar. They're now saying on appeal that their trade dress is the combination of the two elements. Those – if you look at those pictures, many of them only have the collar, not the zipper. None of them refer to the bokaj zipper or the bokaj look of the zipper and the V-neck collar combined. I think there's one reference to the zipper in a foreign publication that is not nearly – Is that a fact question? I mean, maybe you're talking about the bokaj collar because the zipper appears in the collar, and maybe they're referring to the whole thing together. I don't know. Why should I decide on a motion to dismiss that it's implausible that it is? There has to be some limit, Your Honor. And here, to meet that high standard of renown among the consuming public of the United States, there have to be allegations that can plausibly amount to a finding that not only do people consider that these aesthetic design elements to be an indicator of a single source, bokaj, but also that they're so famous that everybody in the United States instantly knows that. There has to be some standard other than just saying we have these coats. They're famous. We get discovery. There has to be something more. And also, if you look at how they pleaded dilution, it says the bokaj brand is famous among consumers of high-end fashion items, and the trade dress is famous too. That's literally the way they pleaded. That can't possibly be enough. The fact that the bokaj brand is famous among a niche group of consumers wouldn't be enough to prove that the bokaj name is famous for federal dilution purposes. And the tag-along after that saying, and the trade dress is famous too, can't possibly be enough. Thank you, Counsel. Thank you. We'll hear from Mr. McClellan in reserve two minutes. I did, Your Honors, but it took a sufficient amount of your time. If you have any questions, I'm happy to address them, if not, I'll wait. One is, can you just point to where, in your briefing to the district court, there was a specific explanation of the difference between the state claim, which essentially sounds in misappropriation, and the trade dress claim? I don't have the supplemental appendix at the ready to answer that question, but I will concede. We did not sufficiently delineate the two, or clearly delineate the two, but the complaint, in our opinion, simply does. How does that work? So opposing counsel is saying, well, look, the allegations are in the complaint, but you argued in opposition to the motion to dismiss that you should understand the unfair competition claim as based on the trade dress infringement. Why can't the district court hold you to those arguments? The district court can do whatever it likes to do, and it can hold us to the arguments. We attempted to distinguish the two in the underlying papers, perhaps not clearly enough or articulately enough, and I regret that. But those papers were submitted with the complaint. This is an overview, and the question isn't, did the papers underlying the motion? The question is, does the complaint state a cause of action, and if not, can it be amended to state a cause of action? And the answer is, it clearly states a cause of action or could be amended. Well, what's the district supposed to do if there are allegations in the complaint that lead to the cause of action, but then in opposition to the motion to dismiss, the complainant never references those allegations, never says that that's the reason why the motion to dismiss should be denied? There was no oral arguments held on this, but without the oral arguments, the decision was issued. We requested leave to amend. We were denied leave to amend, and it's not so much that I fault the district court for that argument, but the fact that with the complaint submitted with our papers, there are two claims. There's a palming off claim and a misappropriation claim clearly delineated that it took our employees. But yes, when you get a motion to dismiss, it's incumbent on the party, on the plaintiff, to explain to the district court what the claims are and why the complaint is sufficient. And, you know, it's not the district judge's job to go back and then parse the complaint and figure out if there's something that you didn't argue that might salvage the complaint if construed a certain way. You've got to make those arguments. If you fail to make those arguments, it's a little hard for us to say the district court erred, which is what we have to find in order to reverse the district court or vacate its judgment, erred by not recognizing that there's a separate theory that was not put to it in the papers. That is the adversarial nature of the system. I understood, Your Honor. It's not doing the pro ses here. I understood. We were responding to their ‑‑ the thrust of their argument was based upon the trade dress claim and the unfair competition based upon a palming off claim. We didn't interpret their unfair competition argument based upon the misappropriation claim. It is based upon misappropriation. Regardless, that would be grounded for denying their motion to dismiss if your unfair competition claim didn't depend on the trade dress infringement. That would be something that you should say. Opposing their motion to dismiss would not be. Correct. We interpreted their thrust of their motion on the unfair competition as being based upon the trade dress claim. Of course, this all depends on the trade dress claim in another way, which is if we find that your trade dress claim was sufficient, then it all kind of goes back to the district court. Or if we find that that could be amended and salvaged, then the district court's primary reason for granting the motion without leave to amend, we'd start all over again, in effect, with a new complaint. And I don't know that, you know, again, common sense and how one practically runs the system plays a role here in how strictly we look at what was, you know, whether somebody gets leave to amend or not and what they can amend about. We'd have to figure out the case as a whole. Correct. Not just pick out, you know, we're going to knock out one of these claims and not another. Correct, but what happened was the district court didn't find the trade, didn't credit the trade dress claim. She just didn't. And then took it, threw the baby out with the bathwater. So that was the thing. Yeah, but I mean, you kind of, what Judge Banaschi has been pointing out is that you kind of said, it's all baby, or it's all bathwater, rather. You said it's all bathwater, so it all goes out. And you didn't distinguish there's a baby in there. As in Cresci and Lorelei, we were responding to their argument, which is that they believe we didn't sufficiently plead the trade dress. We thought that we did. We argued it. The district court found that she believed that we didn't. That's our chance to amend. So can I ask you about the functionality question? Sure. So why is the zipper just like a double-breasted coat, and so it's all functionality? Okay, so three answers to that. The first, utilitarian functionality. Our position is that an asymmetrical zipper is not sort of a utilitarian function. It is a, in this case, an indicator of source. It's not just like a button. It's an indicator of source. It's harder to close. It's harder to close than what, than a unitary? There's two issues to it. One is there's two zippers. But it's easier to close than if you were to wear a jacket and a vest underneath, right? It's even harder than that because it's not just, it's two zippers, and they're not even lined up. So it's, as you point out, your initial thought was this seems like a huge pain to do for the sake of fashion, which is we're doing it because that's the macaj style. That's what people recognize. Under aesthetic functionality, it's the same. It's an indicator of source. It's not just copying a button. Yeah, but that's what you've got to establish ultimately. Putting aside what exactly is enough to get you by Twombly at the motion to dismiss, it seems to me you've got a big hill to climb here to establish that people look at a funny-looking zipper and say macaj, the same way they look at something that says Gucci and say, oh, Gucci. That's essentially what you're going to have to prove to win this case. It may be the case, but that's our hill. We just want the opportunity to climb it. I understand. I know that that's an ultimate question, but I'm curious about what you're saying about it. And on the other functionality question about the V-shaped collar, so opposing counsel says it allows access to the other zipper and so on. Why is that not right? With respect to opposing counsel, I didn't understand the argument. I don't credit the argument. It's a fur hood that actually goes down lower than a traditional collar would. So if it was designed to utilitarianly keep me bundled up for the winter, you wouldn't want the fur to go low. You'd want it to go up high. I'd pop my collar and keep it closed when I'm cold, not let it go down to my belly button. So you're saying that actually your client makes coats that are hard to put on and that keep you cold. And yet look so cool, everybody wants them. When you see them, you know they're ours. Okay. Thank you, judges. Okay. Thank you, counsel. Thank you both. We'll take the case under review. May I please just respond to one point? One second. Is this good? Make it very quick, counsel. Very quick. I know that you have the briefs and you can read them, but if you look at supplemental appendix 26 to 27, you'll see that there's absolutely no way that opposing counsel could have interpreted our argument on the unfair competition claim to be solely based on the trade dress claim. In fact, we argued the opposite. We focused most of our time on the stealing of the models, diagrams, et cetera. There's just no way that that was a mistake on their part. Okay. Thank you, Your Honor. Thank you. We'll take the case under advisement.